IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 03-cv-1334-WDM-BNB

JERRY NORRIS,

      Plaintiff,

v.

CITY OF AURORA, *et al.*,

      Defendants.

_____

## ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
_____

Miller, J.

      This matter is before me on defendants Andrew Crowley and Adolfo Ramirez'

Motion for Partial Summary Judgment, filed June 15, 2005. I have considered the

parties' written arguments and their tendered evidence and have determined that oral

argument is not required.  For the reasons stated below, the motion will be granted in

part, and denied in part.

### Background

      Plaintiff Jerry Norris (Norris) brings this action seeking money damages

against the City of Aurora (Aurora) and individuals from Aurora's police department

alleging that he was shot, seized, detained, and prosecuted in violation of his rights

under the Fourth and Fourteenth Amendments of the United States Constitution.  The

facts are as follows.

      On the evening of July 26, 2001, Norris was sitting in the front room of his

house, practicing for a shooting competition by repeatedly placing an empty magazine into his unloaded handgun.  At approximately 9:14 p.m., defendants Andrew Crowley (Crowley) and Adolfo Ramirez (Ramirez) (together "Defendants"), both of whom were Aurora police officers, were dispatched to Norris' residence based on a 911 hang-up call.  It was later determined that no 911 call had been made from his residence, and Defendants had been dispatched to the wrong address.

When Defendants arrived, Crowley approached the door on the front porch; the door was open except for a screen door, and Crowley either knocked on the door or rang the door bell.  Ramirez went to the window next to the front porch, and could see Norris get up out of his chair and walk to the door holding what he thought was either a gun or a remote control.  Ramirez drew his gun as Norris approached the door.

Crowley told Norris that Aurora had received a 911 call, and asked Norris if everything was all right.  Norris, who did not appear upset or intoxicated, asked "What are you talking about?" and stated that everything was fine.  However, Norris did not drop his gun when he saw the officers, and held it in his right hand pointed at the floor, where it was out of sight.  Norris began lifting the firearm so that Crowley could see it, and, according to Norris, told the officers that it was unloaded and that he was going to put it down.  Norris moved his left hand to the butt of the firearm in order to remove the magazine; however, the Defendants claim that they thought he was cupping the butt of the firearm in order to assume the "Weaver" stance.  Norris asserts that the firearm was never pointed at the officers and that he was turning away from the Crowley when he began to remove the magazine.

2

As Norris was removing the magazine, Ramirez shot him twice. Norris laid the gun and empty clip in the middle of the floor, and then stretched out on the floor. He was placed under arrest and taken to the hospital. In the meantime, Crowley searched the house without a warrant, and in doing so, encountered Norris' mother, Imogene Norris, who told him that they had the wrong house because they did not have an answering machine.[1]

The incident was investigated by Detective Craig Piel (Detective Piel) of the Major Crimes Unit of the Aurora Police Department. Ramirez told Detective Piel that he shot Norris because Norris pointed his gun at Crowley and took the "Weaver" stance. Crowley also told Detective Piel that Norrris lifted the gun and began pointing it at him. The officers did not inform Detective Piel that the firearm was unloaded, that Mrs. Norris told them they were at the wrong address, or that Norris had told the officers his gun was unloaded and that he was putting it down.[2] At the conclusion of the investigation, Detective Piel requested the Arapahoe County District Attorney's office (DA) charge Norris with first degree felony assault (under Colo. Rev. Stat. § 18-2-202) and felon menacing (under Colo. Rev. Stat. § 18-3-206. The DA subsequently charged Norris with two counts of felony menacing.

A trial was held in September 2002. Before trial, deputy DA Smith requested that Ramirez and Crowley participate in a video re-enactment of the shooting, which

---

[1]When dispatch called the number from the 911 hang-up call back, the call was answered by an answering machine.

[2]However, it appears disputed that Norris actually told the officers that he was putting the gun down and that it was unloaded.

appears to have been admitted at trial.[3]  Also at the trial, the prosecution's expert witness testified that it was impossible that Norris was shot while facing the shooter. (Pl.'s Ex. 11, at 37-38.)  The presiding judge dismissed one felony menacing charge relating to Ramirez, and the jury acquitted Norris of the other charge.

Norris filed a complaint asserting the following six claims: (1) Ramirez used unreasonable force against Norris; (2) Crowley and Ramirez subjected Norris to an unreasonable search and seizure; (3 & 4) defendant Aurora failed to properly train and supervise Aurora police officers with regards to use of force, searches and seizures, and proper investigations; (5) all the defendants maliciously prosecuted Norris; and (6) Crowley and Ramirez conspired to deprive Norris of his rights to due process.  Defendants Crowley and Ramirez have moved for partial summary judgment.

<u>Standard of Review</u>

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The nonmoving party must set forth facts showing that there is a genuine issue for trial.  The court views the record in the light most favorable to the party opposing the summary judgment motion.  *Cummings v. Norton*, 393 F.3d 1186, 1189 (10th Cir. 2005).  A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,* 477

---

[3]However, the videotape was offered not by the prosecution but by the defense. (Smith Aff., at ¶ 8.)

U.S. 242, 248 (1986).

Discussion

Defendants seek dismissal of Norris': (1) excessive force claim, based on

Ramirez' qualified immunity and because his conduct was objectively reasonable; (2)

malicious prosecution claim, based on the absence of evidentiary support; (3)

malicious prosecution and civil conspiracy claims because based upon Defendants'

absolute immunity; and (4) civil conspiracy claim based on the absence of evidentiary

support.  I will discuss each argument in turn.

1.      Excessive Force Claim

In his first claim, Norris alleges that Ramirez violated his right to be free from

excessive, unreasonable, and unjustified force under the Fourth and Fourteenth

Amendments to the United States Constitution.  Ramirez argues that this claim must

be dismissed because he is entitled to qualified immunity, and at any rate, his

conduct was objectively reasonable under the Fourth Amendment.

As a preliminary matter, the Supreme Court has held that "all claims that law

enforcement officers have used excessive force--deadly or not--in the course of an

arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under

the Fourth Amendment and its "reasonableness" standard, rather than under a

"substantive due process" approach."  *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Accordingly, I will analyze this claim under the Fourth Amendment only.

"In civil rights actions seeking damages from governmental officials, those

officials may raise the affirmative defense of qualified immunity, which protects all but

5

the plainly incompetent or those who knowingly violate the law." *Holland ex rel.*

*Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001).  When a defendant

asserts a qualified immunity defense, the burden shifts to the plaintiff to "first

establish that the defendant's actions violated a constitutional or statutory right."

*Medina v. Cram,* 252 F.3d 1124, 1128 (10th Cir. 2001).  Thus, in the context of a

motion for summary judgment, I must first consider the threshold question: "[t]aken in

the light most favorable to the party asserting the injury, do the facts alleged show the

officer's conduct violated a constitutional right?"  *Holland*, 268 F.3d at 1185.  If so, then

I must "ask whether the right was clearly established at the time of defendant's

unlawful conduct."  *Id.*  "The relevant, dispositive inquiry in determining whether a right

is clearly established is whether it would be clear to a reasonable officer that his

conduct was unlawful in the situation he confronted."  *Id.* (internal quotation omitted).

If Norris successfully establishes the violation of a clearly established right, the

burden shifts to Defendants, who must prove that there are no genuine issues of

material fact and that they are entitled to judgment as a matter of law.  *Medina*, 252

F.3d at 1128.

        "When the record shows an unresolved dispute of historical fact relevant to this

immunity analysis, a motion for summary judgment based on qualified immunity

should be 'properly denied.'"  *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th

Cir. 2002).  Consequently, a summary judgment motion may not be granted on any

excessive force claim under § 1983 "for which any genuine issue of material fact

remains–regardless of whether the potential grant would arise from qualified

immunity or from a showing that the officer merely had not committed a constitutional violation." *Id.* at 1315.  *See also Zuchel v. Spinharney*, 890 F2d 273, 275 (10th Cir. 1989) (affirming district court's denial of qualified immunity based on evidence in the record casting doubt on objective reasonableness of defendant's use of deadly force).

"A police officer violates an arrestee's clearly established Fourth Amendment right to be free of excessive force during an arrest if the officer's arresting actions were not 'objectively reasonable' in light of the facts and circumstances confronting him." *Olsen*, 312 F.3d at 1313 -1314.  The reasonableness of Ramirez' conduct must be assessed "from the perspective of a reasonable officer on the scene, acknowledging that the officer may be 'forced to make split-second judgments' in certain difficult circumstances." *Id.* (*quoting Medina*, 252 F.3d at 1131.)  Relevant factors include the alleged crime's severity, the degree of potential threat that the suspect poses to an officer's safety and to others' safety, and the suspect's efforts to resist or evade arrest. *Id.  See also Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004) ("an officer's use of deadly force in self-defense is not constitutionally unreasonable).

Defendants assert that Ramirez acted reasonably based upon the threat he perceived to Crowley and himself.  However, disputed issues of material fact remain regarding the reasonableness of Ramirez' conduct under the circumstances.  Norris asserts that when he came to the door, his demeanor was calm and otherwise unsuspicious, he told the officers that his firearm was unloaded and that he was putting it down, that he never pointed the firearm at Crowley, and that he was turning

7

away from Crowley when he was shot.  Additionally, Norris provides expert opinions

that Ramirez' conduct was unreasonable and that forensic evidence may not support

Defendants' version of the incident.  If believed by a trier of fact, these allegations

could support a finding that Ramirez' conduct was not objectively reasonable.  *Zuchel*,

890 F.2d at 276.  *See also Carr v. Castle*, 337 F.3d 1221, 1227 (10th Cir. 2003) (when

issues of material fact remain, and the court determines that a defendant's conduct

as alleged by plaintiff violates clearly established law, qualified immunity is not

appropriate).[4]

Because Norris has adequately asserted that Ramirez violated his Fourth

Amendment right to be free from excessive force, the next question is whether that

right is clearly established.  There can be little dispute that it is.  *See Tennessee v.

Garner*, 471 U.S. 1, 11 (1985) (where the suspect poses no immediate threat to the

officer and no threat to others, deadly force is not justified); *Zuchel*, 890 F.2d at 274

("[e]very person has the right not to be subjected to unreasonable or excessive force

while being arrested or detained by a police officer").  Furthermore, the analysis above

demonstrates likewise that Defendants have not met their burden of demonstrating

there are no genuine issues of material fact and that they are entitled to judgment as

a matter of law.  *Medina*, 252 F.3d at 1128.  *See also Olsen*, 312 F.3d at 1314

---

[4]Cases cited by Defendants are distinguishable because they lacked the type
of factual dispute present in this case.  *See Mace v. City of Palestine*, 333 F.3d 621,
624 (5th Cir. 2003); *Romero v. Bd. of County Comm's*, 60 F.3d 702, 704 (10th Cir.
1995); *Medina*, 252 F.3d at 1132; *O'Neal v. DeKalb County*, 850 F.2d 653, 657-58
(11th Cir. 1988).

("[b]ecause the reasonableness inquiry overlaps with the qualified immunity analysis, a qualified immunity defense is of less value when raised in defense of an excessive force claim").  Consequently, I find that summary judgment is not appropriate as to Norris' first claim.[5]

2.    Evidentiary Support for Malicious Prosecution Claim

Defendants argue that Norris' fifth claim, alleging malicious prosecution, must be dismissed against them as it is unsupported by evidence.

The Tenth Circuit has recognized that a malicious prosecution claim may be cognizable under § 1983, and that the common law elements of malicious prosecution are the "starting point" for the analysis of such a claim.    *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996). "Although the common law tort serves as an important guidepost for defining the constitutional cause of action, the ultimate question is always whether the plaintiff has alleged a constitutional violation." *Pierce*

---

[5]Although Defendants' motion indicates that they believe summary judgment is appropriate as to Norris' second claim, asserting unreasonable searches and seizures of his person and residence, they fail to provide any argument in their opening brief, and address the claim only in a footnote in their reply brief, asserting that it is undisputed that the officers had probable cause to arrest Norris, and that it is well established that officers may conduct a cursory search of a residence incident to lawful arrest.  As a first matter, it is improper for Defendants to raise an issue in their reply brief, and that alone is sufficient to deny their arguments.  *See United States v. Black*, 369 F.3d 1171, 1176 (10th Cir. 2004); *Plotner v. AT & T Corp.*, 224 F.3d 1161, 1175 (10th Cir.2000); *Kansas Wastewater, Inc. v. Alliant Techsystems, Inc.*, 257 F. Supp.2d 1344, 1352 n. 7 (D. Kan. 2003).  Regardless, the discussion *supra* indicates that there is in fact a disputed issue as to whether Norris' arrest and the search of his house were lawful.   Accordingly, Defendants have not met their burden of demonstrating that they are entitled to judgment as a matter of law with regards to his second claim.

*v. Gilchrist*, 359 F.3d 1279, 1289 (10th Cir. 2004).

The elements of the common law tort of malicious prosecution, as applicable in a § 1983 claim, are: (1) the defendant was instrumental in the plaintiff's continued confinement or prosecution; (2) the original action was terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages. *Pierce*, 359 F.3d at 1291-1297.

Defendants first argue that their alleged misrepresentations cannot meet the first element because even if untrue, their statements were not the "proximate and efficient cause of his prosecution." *See Purvis v. Hamwi*, 828 F. Supp. 1479, 1482 (D. Colo. 1993).  First, Defendants' proposed standard may be more stringent than that set forth in the *Pierce* case, namely that the defendant be "instrumental" in the proceedings against the plaintiff.  359 F.3d at 1291.  Regardless, Norris provides evidence that the Defendants misrepresented facts, by asserting that Norris pointed his gun at Crowley and denying that he told the officers that his gun was unloaded and that he was putting it down, both to Detective Piel and throughout the course of the criminal proceedings.  Detective Piel testified that the misrepresentations involved facts important to his investigation and recommendation to charge Norris.  *Cf. Pierce*, 359 F.3d at 1293 (police chemist's report to police and prosecutors that hair analysis supported plaintiff's involvement in crime, when in fact it tended to exonerate him, was sufficient to meet first element); *Taylor*, 82 F.3d at 1563 (noting plaintiff "does not seriously allege that [defendant] made false or misleading statements following his

10

arrest, nor that he somehow caused false or perjured testimony to be presented at the preliminary hearing").

Defendants also argue that they cannot be liable under the first prong because the state court judge's determination that there was probable cause to charge Norris "breaks the chain of causation." This argument fails because, under Norris' version of the facts, Defendants' misrepresentations were the basis of the probable cause determination. *See Robinson v. Maruffi*, 895 F.2d 649, 656 (10th Cir. 1990) ("if police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded"). Under these circumstances, there is a material issue of fact as to whether Norris can meet the first element.

Defendants next argue that Norris cannot establish the third element because they were not responsible for any erroneous determination of probable cause. *See Pierce*, 359 F.3d at 1295 (plaintiff bears heavy burden of showing that "falsification of inculpatory evidence or  suppression of exculpatory evidence was necessary to finding of probable cause"). As a first matter, I note that the facts necessary for a determination of probable cause are disputed, for the reasons discussed above. Furthermore, I find that the probable cause determination necessarily turns on the statements of the Defendants. A review of Detective Piel's statement in support of warrantless arrest demonstrates that the only information indicating that Norris had committed any threatening behavior came from Detective Piel's interviews with

Crowley and Ramirez, during which they indicated that Norris pointed the gun at Crowley.  (Pl.'s Ex. 17.)  Furthermore, Detective Piel testified that if Norris told the officers that the gun was unloaded and that he was putting it away, that would have been a significant fact in his determination of whether to recommend charges against Norris, but that he was not told this.  (Piel Aff., at 48-49.)  Given Norris' contention that Defendants misrepresented these circumstances, a material issue exists.

Defendants also dispute the existence of malice under the fourth element, noting that Norris alleges that Crowley had to be pressured to make his misrepresentations.  However, the *Pierce* court suggested that malice could include "knowingly and intentionally, or with reckless disregard for the truth, falsifying or omitting evidence."  359 F.3d at 1297 n. 12.  *See also Malik v. Apex Intern. Alloys, Inc.*, 762 F.2d 77, 80 (10th Cir. 1985) (in context of punitive damages, malice is defined as "a wrongful act done intentionally without just cause or excuse").  Norris' evidence that Defendants intentionally misrepresented the facts of their encounter, if believed by a factfinder, could demonstrate malice.

Finally, Defendants argue that Norris has not demonstrated adequate damages because he has not demonstrated that the malicious prosecution injured his Fourth Amendment right to be free from unreasonable seizures.  *See Taylor*, 82 F.3d at 1561 ("in the § 1983 malicious prosecution context, [the applicable] constitutional right is the Fourth Amendment's right to be free from unreasonable seizures").  *See also Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001) (rejecting Due Process Clause as basis for malicious prosecution claim); *Murphy v. Lynn*, 118

12

F.3d 938, 944 (2d Cir. 1997) (in order to prevail on a malicious prosecution claim under § 1983, the plaintiff must show a violation of his rights under the Fourth Amendment) (*citing Albright v. Oliver*, 510 U.S. 266 (1994) (plurality opinion)). However, Norris has asserted his claim under both the Fourth and the Fourteenth Amendments, and in *Pierce*, the Tenth Circuit noted that a constitutional malicious prosecution claim will sound under the Fourteenth Amendment under the circumstances of this case.  359 F. 3d at 1287-26.  In particular, the *Pierce* court noted that "the initial seizure is governed by the Fourth Amendment,...but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause."  It also noted that "police officers can be liable under the Due Process Clause, pursuant to § 1983, for withholding exculpatory evidence."  *Id.* at 1293.  Defendants have not demonstrated that Norris' claimed damages are somehow improper under the Due Process Clause.[6]  As a result, Defendants have not demonstrated that Norris' claim five is so lacking in evidentiary support that they

---

[6]Moreover, at least one court of appeals has determined that circumstances like those here may form the basis for a malicious prosecution claim under the Fourth Amendment, because "while a state has the undoubted authority, in connection with a criminal proceeding, to restrict a properly accused citizen's constitutional right to travel outside of the state as a condition of his pretrial release, and may order him to make periodic court appearances, such conditions are appropriately viewed as seizures within the meaning of the Fourth Amendment."  *Murphy*, 118 F.3d at 946.  *See also Albright v. Oliver*  510 U.S. 266, 277-278 (1994) (Ginsburg, J., concurring) ("[a]t common law, an arrested person's seizure was deemed to continue even after release from official custody); *id.* at 290, (Souter, J., concurring) (noting that movement is restrained when "seizure occurs or bond terms are imposed ");  *id.* at 307 (Stevens, J., dissenting) (noting agreement with Justice Ginsburg's view that "the initial seizure of petitioner continued until his discharge").  At any rate, because Norris' claim survives on its Fourteenth Amendment basis, I need not now determine this question.

are entitled to judgment as a matter of law.

3.      Absolute Immunity

Defendants claim they are entitled to absolute immunity from Norris' fifth claim,

alleging malicious prosecution, and sixth claim, alleging civil conspiracy, because

these claims are based on their allegedly untruthful testimony in judicial proceedings.

*See Briscoe v. Lahue*, 460 U.S. 325, (police officers, like other witnesses, are

absolutely immune from damages liability based on their testimony in judicial

proceedings). *See also Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir. 1994) (noting

extension of *Briscoe* immunity to alleged conspiracies to commit perjury).

Norris first responds that Defendants are not entitled absolute immunity

because their perjurious testimony was only "part and parcel" of the larger claims.

*See  Hammond v. Kunard,* 148 F.3d 692, 696 (7th Cir. 1998); *Limone v. United States*,

271 F.Supp.2d 345, 367 (D.Mass. 2003).  However, in the cases cited by Norris, the

alleged perjury was a comparatively insignificant portion of the defendants overall

conduct.  *See Hammond*, 148 F.3d at 696 (noting argument that "giving false

testimony before juries is the least of what [plaintiff] has charged the defendants").

Norris also argues that Defendants are not entitled to absolute immunity

because they are "complaining witnesses."  *See Anthony v. Baker*, 955 F.2d 1395-99

(10th Cir. 1992).  In *Anthony*, the Tenth Circuit held that to the extent an officer was a

complaining witness, he was not immune from liability for testimony given before the

grand jury and at a pretrial hearing to determine probable cause, because it was "not

convinced that common law granted absolute immunity to a complaining witness who

14

initiated–at least in part–a baseless prosecution by giving false testimony at a grant jury proceeding." *Id.* at 1399.  Consequently, the court held that, "in the context of a § 1983 suit for malicious prosecution, a complaining witness is not absolutely immune for his testimony at either a *grand jury proceeding or a preliminary hearing* if that testimony is relevant to the manner in which the complaining witness initiated or perpetuated the prosecution." *Id.* at 1402 (emphasis added).

However, the case law describing the complaining witness exception does not indicate that the fact that an officer acted as a complaining witness in initiating a criminal case eliminates the broad witness protection provided by *Briscoe*.  In *Malley v. Briggs*, 475 U.S. 335 (1985), the case that essentially established the complaining witness exception, the Supreme Court was not addressing trial testimony, but the conduct of an officer who wrongfully initiated a criminal prosecution by applying without probable cause to a judge for an arrest warrant.  *Id.* at 341-42.  The *Malley* Court held that the officer's function was similar to that of a complaining witness, and at common law, a complaining witness "who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without probable cause." *Id.* at 340.  The issue of trial testimony was not before the Court, and it made no indication that the complaining witness exception would apply in the case of trial testimony.  *See Kulwicki v. Dawson*, 969 F.2d 1454, 1467 n.16 (3d Cir. 1992) (declining to "interpret the language in *Malley* as overriding the broad witness protection announced in Briscoe").  *See also Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003) (distinguishing "complaining witnesses" from "testifying

15

witnesses"); *Anthony*, 955 F.2d at 1399 ("[w]e have not discovered any pre-1871

malicious prosecution cases that grant absolute immunity to a complaining witness

for testimony in a *pre-trial proceeding*") (emphasis added); *White v. Frank*, 855 F.2d

956, 961 (2d Cir. 1988) ("[w]here, however, the constitutional tort is the action of a

police officer in *initiating* a baseless prosecution, his role as a "complaining witness"

renders him liable to the victim under section 1983, just as it did at common law, and

the fact that his testimony at a judicial proceeding may have been the means by which

he initiated the prosecution does not permit him to transpose the immunity available

for defamation as a defense to malicious prosecution") (emphasis added).

Consequently, I agree with Defendants that they are entitled to absolute

immunity for their trial testimony.  However, because I am not provided with the context

of any other pre-trial testimony given by Defendants, I cannot determine whether such

testimony is "relevant to the manner in which the [Defendants] initiated or perpetuated

the prosecution," *Anthony*, 955 F.2d at 1402, and I will deny Defendants' motion with

regards to such testimony, without prejudice to their moving to preclude its admission

at trial.

4.     Evidentiary Support for Conspiracy Claim

Finally, Defendants argue that Norris' civil conspiracy claim lacks evidentiary

support, specifically with regards to the required elements of (1) a constitutional

violation; and (2) a conspiracy.

Under Tenth Circuit precedent, "a conspiracy to deprive a plaintiff of a

constitutional or federally protected right under color of state law" is actionable.  *Snell*

*v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990). As one of the elements of the claim, Norris must "plead and prove...an actual deprivation of rights." Defendants argue that Norris has not done so, relying on their argument that his malicious prosecution claim does not allege damages to his constitutional rights. Because I rejected that argument above, it fails here as well.

Next, Defendants argue that Norris has not provided any evidentiary support for his claim that they formed an agreement to maliciously prosecute Norris. *See Hunt*, 17 F.3d at 1266 (conspiracy claim must be supported by more than conclusory allegations). Defendants rely on *Cayman Expl. Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1361 (10th Cir. 1989) for the proposition that "mere parallel" conduct cannot give rise to an agreement for conspiracy purposes. However, *Cayman*, in which the Tenth Circuit held that "conscious parallel business behavior, standing alone, is insufficient to prove conspiracy" for purposes of an antitrust action, is clearly inapposite. *See id*.

Here, Norris provides evidence that Ramirez shot Norris without adequate justification and that Defendants subsequently misrepresented the facts to Detective Piel, by falsely claiming that Norris pointed his firearm at Ramirez and by omitting the fact that Norris told the officers that his firearm was unloaded and that he was putting it down. If these facts were believed, a factfinder could reasonably infer that the Defendants had agreed to make these misrepresentations to transfer the blame for the shooting from Ramirez to Norris. Consequently, Defendants are not entitled to judgment as a matter of law on this claim.

17

Accordingly, it is ordered that :

1.    Defendants' motion for summary judgment, filed June 15, 2005 (Docket

      # 17) is granted in part and denied in part.

2.    Plaintiff may not introduce Defendants Crowley and Ramirez' trial

      testimony as evidence to support their liability under his fifth and sixth

      claims.

3.    Defendants' motion is otherwise denied.

DATED at Denver, Colorado, on July 25, 2005.

                                        BY THE COURT:


                                        /s/ Walker D. Miller
                                        United States District Judge